UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROMANDO DESHONE SMITH, | Case No. 1:08-cv-26 |
| Petitioner, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Ellen S. Carmody |
| CARMEN PALMER, | |
| Respondent. | |

## OPINION and ORDER

Overruling the Plaintiff's Objections and Adopting the R&R;
Dismissing the Section 2254 Habeas Petition for Lack of Merit;
Declining to Issue a Certificate of Appealability;
Terminating and Closing the Case

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on August 4, 2009. With the benefit of a lengthy extension of time, petitioner Romando DeShone Smith ("Smith") filed timely objections on November 25, 2009.[1] As

---

[1]

As will be discussed below, the court finds that not all of plaintiff's objections are sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which he has objected. "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney,

ordered by the court, respondent warden Carmen Palmer ("the government") filed a response to Smith's objections on January 8, 2010. **The court finds the R&R to be well-reasoned and is unconvinced by movant Smith's objections.** For the reasons that follow, the court will adopt the R&R and deny Smith's motion.

Bench Trial and Direct Appeal. Following a bench trial in Michigan state court, Smith was convicted of assault with intent to commit murder, armed robbery, felon in possession of a firearm, and two counts of possession of a firearm during the commission of a felony, in violation of MICH. COMP. LAWS § 750.83, § 750.529, § 750.224f, and § 750.227b. The Michigan court found Smith to be a third habitual offender under MICH. COMP. LAWS § 769.10 and sentenced him to concurrent terms of imprisonment of 7-10 years, 18-60 years, and 30-60 years, followed by two consecutive terms of two years apiece. (The Magistrate Judge has ably summarized the testimony and evidence presented during the bench trial, *see* R&R at 3-14.) Represented by counsel, Smith appealed as of right to the Michigan Court of Appeals in 2003, contending that the prosecution presented insufficient identifying evidence to support his conviction for armed robbery, and that it presented insufficient on the intent element of his assault with intent to murder conviction. In 2004, the Michigan Court of Appeals affirmed Smith's convictions and sentences, and the Michigan Supreme

---

J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.));

*Foster v. Ameriquest Mortgage*, 2009 WL 646420, *2 (E.D. Mich. Mar. 11, 2009) (adopting R&R without review, noting, "Plaintiff does not list specific objections . . . . Instead, Plaintiff merely attempts to reassert his claims for relief. * * * 'Overly general objections do not satisfy the objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)).

2

Court denied leave to appeal. *See People v. Romando Deshone Smith*, No. 245098, 2004 WL 316156 (Mich. App. Feb. 19, 2004) (p.c.) (P.J. Murray, Murphy, Markey), *leave to app. denied*, No. 125921, 471 Mich. 868, 683 N.W.2d 676 (Mich. July 29, 2004) (table).

Collateral Review in State Court. Smith filed a motion for relief from judgment in Michigan state court in May 2005.[2] After the Michigan Court of Appeals ruled in Smith's favor regarding the page limitation applicable to briefs supporting such motions, he filed a new motion from relief from judgment, with a longer brief, in May 2006, raising grounds three through six of the instant section 2254 motion (all arguments except the insufficient-evidence arguments). The Michigan county circuit court denied Smith's renewed motion for relief from judgment, and the Michigan Court of Appeals and Supreme Court denied leave to appeal in November 2007.

Smith's section 2254 motion first contends that the evidence presented was insufficient to support the convictions for armed robbery and assault with intent to murder (claims one and two). He next contended that his trial counsel rendered constitutionally ineffective assistance by failing to locate, interview, and call Kenny O'Day as an alibi witness, failing to present the alibi defense *vel non*, and failing to pursue exculpatory documents (claim 3A); by failing to present a self-defense theory and call George Jones to support the defense (claim 3B); and by failing to call an independent ballistics expert at trial (claim 3C). Finally, movant Smith contended that *appellate* counsel rendered constitutionally ineffective assistance (claim 4).

---

[2] While Smith's motion for relief from judgment was still pending in the Circuit Court for Kalamazoo County, Michigan, he filed a section 2254 habeas petition in this court. Judge Quist dismissed the petition without prejudice for failure to exhaust available state-court remedies. *See Smith v. Romanowski*, No. 1:2005-cv-636, 2005 WL 3071785 (W.D. Mich. Nov. 16, 2005).

3

The Magistrate Judge correctly set forth the deferential AEDPA standard which governs this court's collateral review of a state-court conviction or sentence under 28 U.S.C. § 2254, *see* R&R at 16-18. Under that standard, Smith has presented no basis for this court to disturb his convictions, whether due to the state court's unreasonable application of federal law or due to a clearly-erroneous factual finding.

Evidence was Sufficient to Sustain Conviction for Armed Robbery.

The parties agree that Smith expressly raised and developed his two insufficient-evidence arguments on timely direct appeal to the Michigan Court of Appeals and Michigan Supreme Court, and therefore those two claims are not procedurally defaulted and may be raised on federal habeas review. Nonetheless, both evidentiary claims lack merit for the reasons stated by the R&R.

As the Magistrate Judge notes, R&R at 19, a challenge to the sufficiency of the evidence to sustain a conviction is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). This court asks only "'whether[,] after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *US v. Mitchell*, 2009 WL 87474, *4 (6th Cir. Jan. 13, 2009) (Richard Allen Griffin, J.) (quoting *Jackson*, 443 U.S. at 319, and citing *US v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006)), *cert. denied*, – U.S. –, 129 S.Ct. 2418 (2009). As our Circuit has emphasized, *Jackson* places a "'very heavy burden'" on a defendant who contends that the evidence was insufficient to support his conviction. *See Mitchell*, 2009 WL 87474 at *4 (quoting *US v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)). Accordingly, the United States Supreme Court recently explained, "'reversal for insufficiency of the evidence is in effect a determination that the government's case against the

4

defendant was so lacking that the trial court should have entered a judgment of acquittal.'" *McDaniel v. Brown*, – U.S. –, – S.Ct. –, 2010 WL 58361, *6 (U.S. Jan. 11, 2010) (quoting ))

In conducting the *Jackson* analysis, the court must "'draw all available inferences and resolve all issues of credibility in favor of the [factfinder's] verdict.'" *US v. Tab*, 259 F. App'x 684, 687 (6th Cir. 2007) (Griffin, J.) (citing *US v. Rayborn*, 495 F.3d 328, 338 (6th Cir. 2007)), *cert. denied*, – U.S. –, 128 S.Ct. 1759 (2008). Moreover, this court may not weigh the evidence or substitute its judgment for that of the factfinder. *See McMillian v. Berghuis*, 2009 WL 3877510, *20 (W.D. Mich. Nov. 18, 2009) (citing *US v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006)). Finally, where the record supports conflicting inferences, the court "'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (quoting *Jackson*, 443 U.S. at 326).

Pursuant to Michigan law in effect when the victim was robbed in September 2001, the elements of armed robbery were (1) an assault and (2) a felonious tasking of property from the victim's presence or person (3) while the defendant was armed with a weapon described in the statute. *See People v. Rodgers*, 248 Mich. App. 702, 707, 645 N.W.2d 294, 298 (Mich. App. 2002) (citing *People v. Turner*, 213 Mich. App. 558, 569, 540 N.W.2d 728, 734 (Mich. App. 1995) (citing MICH. COMP. LAWS § 750.529 and *People v. Allen*, 201 Mich. App. 98, 100, 505 N.W.2d 869, 871 (Mich. App. 1993)))). This court agrees with the Magistrate Judge that the Michigan Court of Appeals's disposition of this evidentiary claim provides no basis for disturbing Smith's armed-robbery conviction under AEDPA. As the Michigan Court of Appeals wrote,

> Defendant acknowledges that the complainant plainly identified him as among those who robbed him in September 2001. However, defendant points out that the

> complainant testified that he was approached by three armed robbers, and that they took money from him without speaking, and protests that another eyewitness testified that there were only two assailants, only one of whom was armed, but both of whom gave the complainant verbal commands. Defendant additionally cites scanty authority for the proposition that eyewitness identification is not always reliable. These arguments are unavailing.
>
> * * * We are not about to rule, as a matter of law, that a factfinder may not choose to believe one witness'[s] identification testimony, and come to a legally sound conclusion on the basis of it, even where contradicted by others. The accounts of a single witness can suffice to persuade a jury of a defendant's guilt beyond a reasonable doubt. *People v Jelks*, 33 Mich App 425, 432-33[,] 190 NW2d 291 (1971). Even where the witnesses' identification of the defendant is less than positive, the question remains one for the trier of fact. *People v Abernathy*, 39 Mich App 5, 7[,] 197 NW2d 106 (1972). In this case, the complainant's unequivocal identification of defendant as among the armed persons who robbed him on the occasion in question was sufficient to support the trial court's finding in that regard.

R&R at 19-20 (citation omitted). White identifies no U.S. Supreme Court decision which was unreasonably interpreted or applied by the Michigan Court of Appeals on this issue. He objects that

> the Magistrate failed to mention that the complainant testified that the robber had had his head inside his coat and something tied around his mouth. (TT. II, pp. 199, 223). Furthermore, the Magistrate Judge failed to consider the testimony of prosecution witness Charlotte Warren who testified that she witnessed the entire episode from her kitchen window which was six to seven feet away. Ms. Warren testified that only two persons were involved in the robbery and that only one of these persons w[as] armed with a weapon (handgun). (TT. I, pp. 113-118)
>
> Contrary to the Magistrate's R&R, the prosecutor presented insufficient proof as to the identification of the Petitioner as being an actual participant in the armed robbery. Petitioner's conviction rested squarely upon Mr. White's ability to identify Petitioner during an extremely stressful situation which occurred in the dark of the night, which by the complainant's own testimony was "pretty quick" and it was dark out, additionally the complainant testified that Petitioner allegedly stood behind him during the entire course of the robbery with the Petitioner's head inside his coat and something tied around his mouth. [Smith provides no citation to the trial testimony.]
>
> Accordingly, it is the likelihood of mis-identification that violates a Petitioner's due process right. *Neil v. Biggers*, 409 U.S. 188, 198 . . . (1972). This due process concerned is heightened when that mis-identification is possible because the witness is called upon to identify a stranger whom [sic] was observed only at a time of extreme emotional stress and excitement. *See Manson v. Brathwaite*, 432 U.S. 98,

6

> 112 . . . (1977); *Simmons*, 390 U.S. at 383-84 . . . ; *United States v. Russell*, 532 F.2d 1063, 1066 (6th Cir. 1976).
>
> Five factors that are considered in assessing the reliability of the identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the Petitioner; and (5) the length of time between the time and the confrontation. *Manson*, 432 U.S. at 114 . . . ; *Biggers*, 409 U.S. at 199-200 . . . .
>
> Although this "identification" was a key element in the prosecution's case, it was not substantially corroborated by other evidence lending to it's [sic] independent reliability. (TT, II, pp. 199, 200, 221, 223). *See United States v. Stevens*, 935 F.2d 1380, 1392 (3rd Cir. 1991). When countervailing considerations exist that may detract from the reliability of the victim's identification, courts are to take note.

Smith's Objections at unnumbered pages 2-3. Smith presents merely testimony and reasoning which could have justified a rational factfinder in finding that eyewitness Warren's account was more reliable than the victim's account, i.e., she was comparatively safe in her kitchen while the victim was under extreme stress and obvious danger. But Smith fails to show that the evidence *compelled* any rational factfinder to consider Warren's recollection more credible or reliable than the victim's recollection.

For example, as a matter of basic logic, the fact that the robbery took place "pretty quick" (according to the victim) tends to undermine the reliability of eyewitness Warren's recollection just as much as it tends to undermine the victim's recollection. The same is true of the fact that it was dark outside when the robbery occurred; while Warren may have had lights on in her kitchen, the robbery which she observed took place in the darkness outside, and that darkness tends to undermine the reliability of eyewitness Warren's recollection just as much as it tends to undermine the victim's recollection.

Smith's objection that the Magistrate did not consider the victim's testimony that the robber

7

had his head inside his coat and had something wrapped around his mouth, is also unavailing. Smith conveniently overlooks the victim's testimony that he *saw* Smith (whom he knew as "Shawn Oak" or "Shawn O") and a man named Kenny O'Day carrying guns, and that Smith and O'Day pointed their guns at him (which he also could not have seen if Smith was standing *behind* him the entire time). *See* R&R at 11 (citing Trial Transcript II at 197-98).

Thus, consideration of the *Manson* (432 U.S. at 114) factors which Smith cites for determination of a witness account's reliability, does not undermine the reliability of victim White's account nearly as much as he suggests, either in absolute terms or relative to eyewitness Warren's account. Specifically, based on the testimony discussed in the R&R and above herein, a rational factfinder could find that victim White (1) did have an opportunity of the witness to view Smith at the time of the crime; (2) may have been under stress, but still had a sufficiently high "degree of attention" at the time when he says he saw Smith pointing a gun at him; (3) did not previously give an inaccurate or indefinite description of the defendant (rather, right after the robbery, Smith told his girlfriend and/or his girlfriend's sister that he had been robbed *by Smith ("Shawn O")* and other men, *see* R&R at 11 (citing Trial. Transcript II at 201-202; (4) displayed certainty when he confronted Smith at trial.

Finally, the government is correct, *see* Gov's Response to Objections at 6, that *Manson*, 432 U.S. 98, is inapposite in a crucial respect. Namely, Smith cannot rely on *Manson*'s statement that due process concerns from an undue or unacceptably high risk of misidentification are particularly serious when a witness is asked to identify a stranger who was observed only once and only during a time of extreme stress and fear. As noted above, victim White testified that he already knew Smith (as "Shawn O") before the robbery.

## Evidence was Sufficient to Sustain Conviction for Assault with Intent to Murder.

Smith's objection to sufficiency of the evidence on the assault-with-intent-to-murder conviction is less than clear, and cites no case law whatsoever suggesting that the Michigan Court of Appeals unreasonably applied U.S. Supreme Court precedent on this issue. Smith's objection reads as follows:

> The Magistrate reaches this conclusion because the victim was shot in the back and the leg, and [because] the physician testified that the wound to the back had the potential to be life[-]threatening. Furthermore the Magistrate concluded that due to the nature of White's injuries[,] Petitioner possessed the requisite malice to warrant a conviction of assault with intent to commit murder. (R & R pp. 20-22)
>
> The Magistrate judge speculated many reasons for the support of Petitioner's conviction, but the Judge failed to consider that Mr. White stated that Petitioner was nowhere near his apartment door (where the shell casings were found). Instead Mr. White stated that Petitioner was standing between the cut [sic] and never came toward him. (TT, I pp. 91, 93, 97, 102, 232). Mr. White also stated that Petitioner was also standing 30-40 feet away from him when the shooting occurred. (PE, p. 16)
>
> It's clear from Mr. White's testimony that the only person that [sic] was in the area of the shell casings found near the door of Apartment 1044 # C, [sic] By the tree that Mr. White stated that he fell next to, and along the path that was taken by Mr. White.
>
> The Magistrate further reiterates the Court of Appeals['] analysis that although Petitioner denied participation in the shooting[,] he lapses into a self-defense argument because the evidence supports the fact that different shell casings were found near Mr. White which would show that Mr. White was armed and was shooting a semi-automatic weapon in the direction of [a] person standing between buildings 1046 and 1048 [of the "Interfaith" apartment complex], which would lead to the logical conclusion that the person was acting in self-defense and was returning fire.
>
> The Magistrate is inferring [implying?] that Petitioner is claiming that he denied participation in the shooting, but if the Court believes that he did the shooting then he did it in self-defense. This is not the case, the reason for stating the obvious that Mr. White was shooting at someone was to show the Court that the person who shot Mr. White (Petitioner still vehemently denies being the shooter), was doing so without the intent to commit murder . . . .

9

> Petitioner's reason for bringing to the Court's attention the obvious fact that Mr. White was shooting at someone is to show that there was not intent to kill because whomever shot Mr. White possibly was acting in self-defense [and] therefore, [the evidence supporting] Petitioner's conviction for Assault with Intent to Commit Murder was insufficient.

Smith's Objections at unnumbered pages 3-5 (first paragraph break added).

To the extent that the court can discern Smith's reasoning, he seems to be arguing that according to the victim, the victim himself was the only one who was ever near the location where the shell casings were later found. Therefore, Smith urges the inference that victim White was firing a firearm; then he suggests that whoever shot at White – if anyone – *may* have been acting in self-defense. This is disingenuous and legally untenable nonsense. The record contains no allegation that since the time when White was shot, Smith sustained some head trauma, drug overdose, or other injury which has seriously impaired his ability to remember major events. Therefore, Smith knows with certainty whether or not he shot at White on the day of the charged assault with intent to murder. In such a situation, there is no authority permitting a criminal defendant to engage in the equivalent of "pleading in the alternative". As the Michigan Court of Appeals concluded, the evidence and testimony permitted the factfinder to find that he did shoot White on the day in question, and that he was acting not in self-defense. The shell-casing and testimonial evidence emphasized by Smith might have permitted the factfinder to reach a contrary conclusion, but it did not *compel* any rational factfinder to do so – particularly in light of White's testimony that he clearly *saw* Smith shooting at him.

Once the factfinder (permissibly) found that Smith shot White on the day in question and that Smith was not acting in self-defense, the medical evidence and expert medical testimony then supported the ultimate conclusion that Smith intended to kill White with the shots. As the

Magistrate Judge noted, Michigan case law permits a factfinder to consider the nature and extent of the alleged victim's injuries when determining whether the alleged assailant intended to kill. *See* R&R at 21 (citing *Mills*, 537 N.W.2d at 915, 450 Mich. at 71).

In the *Mills* case, the government charged that defendant and others invited a woman into their car, intentionally threw gasoline on her, held her down so that she could not escape, and set her on fire, causing severe burns over 60% of her body as well as smoke/chemical-inhalation injury. *See Mills*, 537 N.W.2d at 912, 450 Mich. at 63-65. Defendant challenged his conviction under MICH. COMP. LAWS § 750.83 for assault with intent to commit murder. The Michigan Supreme Court explained the significance which the jury was permitted to attach to the woman's injuries as depicted in photographs taken shortly after the attack:

> * * * [I]t has been held that evidence of injury is admissible to show intent to kill. *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973). Thus, one of the crucial elements of the crime and a crucial issue of this case was the intent of Mr. Mills and [another defendant].
>
> The photographs were essential in proving intent [to kill] because they illustrated the nature and extent of the injuries. The severity and the vastness of the victim's injuries were of consequence to the determination [of] whether the defendants' acts were intentional. The fact that the victim was burned over sixty percent of her body made it more probable that the acts of the defendants were intentional and not accidental. It would have been quite difficult to "spill" gasoline on a victim in the back seat of a car that could cause such severe damage.
>
> Indeed, the photographs were effective in showing splattered burns, which were of consequence to [determination of] the method by which [the victim] was doused with the gasoline, i.e., intentionally or accidentally. The splattering made it more probable that the gasoline was intentionally thrown on [the victim]. Had the gasoline been spilled on the victim, the burns would not have been as "splattered."

*Mills*, 537 N.W.2d at 915, 450 Mich. at 71-72; *see also People v. Johnson*, No. 285888, 2009 WL 3931057, *3 (Mich. App. Nov. 19, 2009) (p.c.) (P.J. Borrello, Whitbeck, K.F. Kelly) (in prosecution arising out of shooting death of one-year old child who had been riding in automobile, where

11

defendant alleged that he was trying to terrorize the vehicle's occupants rather than kill them, evidence that bullet passed through child's brain was relevant, and panel held, "'[T]he severity of the victim's injuries and the use of a dangerous weapon evidence an intent to kill.") (citing *People v. Dumas*, 454 Mich. 390, 403, 563 N.W.2d 31, 37 (Mich. 1997) (Riley, J., for the Court, joined by C.J. Mallett and J. Brickley and J. Cavanaugh in pertinent part)).

In this case, as the Magistrate Judge noted, not only were multiple shots fired , White was shot in the back, and the physician who examined White testified that the gunshot wound to the back of the chest cavity had the potential to be life-threatening, both facts which a factfinder in Michigan may treat as evidence that the shooter intended to kill White. *See, citing Mills*: *People v. Cowart*, No. 287186, 2010 WL 23688, *2 (Mich. App. Jan. 5, 2010) (p.c.) (P.J. Meter, Borrello, Shapiro) ("The photograph of the victim illustrated the victim's head injury and abdomen wound that necessitated a breathing tube, which supported the prosecution's theory that defendant shot the victim with an intent to kill."); *People v. Hardin*, No. 285639, – N.W.2d –, –, 2009 WL 3103754, *__ (Mich. App. Sept. 29, 2009) (p.c.) (P.J. Saad, Whitbeck, Zahra) (in case where defendant allegedly lunged at victim without provocation and stabbed him in the chest with a knife that looked to be about eight inches long, panel remarked, "There was medical evidence that the three-centimeter stab wound was inflicted within an inch of Thompson's heart, and was considered a 'life-threatening' injury. Hardin's declaration immediately before the stabbing, his use of a dangerous weapon, *his infliction of a life-threatening injury*, and his act of removing the knife and fleeing the scene, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to infer that Hardin acted with an intent to kill.") (emphasis added) (WestLaw star-page numbers not available).

For these reasons, the court agrees with the Magistrate Judge that the Michigan Court of Appeals – in addition to apparently correctly applying Michigan law – did not unreasonably apply any U.S. Supreme Court decisions in concluding that the evidence was sufficient to convict Smith of assault with intent to kill White.

Habeas Claim 3B:  Smith Waived Objection on Ineffective-Assistance Self-Defense Issue.

Smith's federal habeas claim 3B was that trial counsel rendered constitutionally ineffective assistance by failing to present a self-defense theory and to call George Jones as a witness in support of that theory. Smith's objections state only, "Petitioner relies on his Brief in Support of his Writ of Habeas Corpus for this argument to show why the Magistrate's argument is unpersuasive, and asks this court to grant Habeas relief on this issue." Smith's Objections at 7. This does not constitute a valid objection to an R&R. "To the extent that a party purports to incorporate by reference arguments, evidence, or authorities presented in prior filings, he has lodged an unavailing general objection." *Jones v. SSA*, 2009 WL 3498809, *1 (W.D. Mich. Oct. 26, 2009) (Maloney, C.J.) (citations omitted). *See Smith v. Konteh*, 2009 WL 799095, *3 (W.D. Mich. Mar. 23, 2009) (petitioner failed to satisfy the requirement of a specific objection by stating, "Petitioner respectfully objects to all the magistrate['s] proposed findings on the grounds previously stated in petitioner's original . . . and . . . amended habeas corpus petition . . . .") (citing *Miller v. Palmer*, 2008 WL 4457838, *2 (E.D. Mich. Sept. 30, 2008) (Cleland, J.) ("An objecting party may not simply 'incorporate by reference' earlier pleadings . . . .") (citing *Howard v. HHS*, 932 F.2d 505, 508 (6th Cir. 1991)), *recon. denied*, 2008 WL 5102254 (E.D. Mich. Dec. 1, 2008)), *recon. denied*, 2009 WL 1811634 (W.D. Mich. Apr. 27, 2009). *See also Foster v. Ameriquest Mortgage*, 2009 WL 646420,

*2 (E.D. Mich. Mar. 11, 2009) (adopting R&R without review, noting, "Plaintiff does not list specific objections . . . . Instead, Plaintiff merely attempts to reassert his claims for relief. * * * 'Overly general objections do not satisfy the objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006));

"It is not the court's job to scour earlier filings for reasoning or citations that" White failed to include in his objections, "and the court will not do so." *Andreas v. SSA*, 2009 WL 427377, *2 (W.D. Mich. Feb. 18, 2009) (citations omitted). The Magistrate Judge's recommended disposition of habeas claim 3B stands effectively uncontested and will be adopted.

Counsel Did *Not* Render Ineffective Assistance by Failing to Call O'Day as Alibi Witness.

Smith's habeas claim 3A is that trial counsel rendered constitutionally ineffective assistance by failing to find and interview Kenny O'Day – whom victim White stated was one of the armed robbers – and call him as a witness. Like the Magistrate Judge, this court declines to consider whether this claim was procedurally defaulted by Smith's failure to raise it on direct appeal to the Michigan Court of Appeals.

Smith asserted before the Magistrate, and continues to assert now, that O'Day would have testified that while he participated in the armed robbery, Smith did not. In support of this assertion, Smith presented the Magistrate Judge with an affidavit which O'Day executed in April 2005, more than two and a half years after Smith's September 2002 trial, claiming that he and two people known as "Rob" and "E" – not Smith – robbed White.

The Magistrate Judge cogently reasons that at the time of Smith's trial, O'Day was also charged with the armed robbery, so "substantial" Fifth Amendment issues, to say the least, would

14

have confronted White's counsel if he attempted to call O'Day as a witness. Primarily, even if White had called O'Day as a witness, O'Day would have had the right to refuse to answer on the ground that answering might incriminate him in that very crime. Moreover, as a factual matter, the Magistrate Judge accurately notes that O'Day's affidavit never states that he would have testified to exculpate Smith and inculpate himself if called at Smith's trial, instead remarking only that he wanted to get his participation in the robbery " off his chest" now. Accordingly, the court agrees with the Magistrate Judge that Smith has not carried his burden of rebutting the strong presumption that counsel's representation was competent within the wide range of discretion accorded to counsel, nor has he shown that O'Day likely would have given exculpatory testimony, as required to show that counsel's alleged deficient decision not to call O'Day prejudiced Smith.

> Smith's objection on this issue begins as follows:
>
> The Magistrate speculates that Mr. O'Day would have had to assert his Fifth Amendment rights and the Magistrate further speculates that Mr. O'Day would not have testified at Petitioner's trial. In the affidavit Mr. O'Day clearly states that "I am willing to testify on the (sic) behalf of this statement" (Affidavit of Kenny Lee O'Day). So[,] contrary to the Magistrate's speculation[,] Mr. O'Day in fact was willing to testify that he and 2 others robbed the complainant[,] not Petitioner. Furthermore, the Magistrate speculated that O'Day would not have provided useful testimony, (R & R pg 25), *[except for the fact that he was the person who robbed the complainant not Petitioner.]*

Smith's Objections at unnumbered pages 6-7 (brackets and italics in original). O'Day's affidavit indicates a willingness, in the current tense, to testify that he, but not Smith, was not involved in the armed robbery of White. Crucially, O'Day's affidavit does *not* state that he was willing, *at the time of Smith's trial*, to testify to that effect. Therefore, this portion of Smith's objection lacks evidentiary support even if the court credits O'Day's belated affidavit. *See Williams v. Stovall*, 2009 WL 1212980, *17 (E.D. Mich. Apr. 29, 2009) (Battani, J.) (rejecting habeas petitioner's claim that

15

trial counsel was ineffective for failing to call certain witnesses, noting that "petitioner has presented no affidavits from the witnesses averring that they were available and willing to testify [at trial], and that they would have done so in the manner suggested by petitioner.").

The remainder of Smith's objection on habeas claim 3A is meritless as well. Smith writes,

> In *Towns v. Smith*, 395 F3d 251 (CA6, 2005), a case analogous to Petitioner's case, the Sixth Circuit found that defense trial counsel was ineffective in failing to call a key defense witness who would have testified to being involved in the charged crimes and that defendant was not involved; trial counsel's decision not to present the witness'[s] testimony was not reasonable strategy where counsel did not interview the witness before trial. *Id.* at 260.
>
> [Likewise,] in Petitioner's case counsel failed to investigate Mr. O'Day after he was made aware of him, and the case against Petitioner was weak [as] there is no direct evidence linking him to the crime, and the strong "evidence" was Mr. O'Day's [sic] testimony which was equivocal at best. Based on this argument Petitioner has satisfied both prongs of the *Strickland* standard, and Petitioner is entitled to habeas relief on this issue.

Smith's Objections at unnumbered pages 6-7. As the government rightly argues, *see* Gov's Response to Objections at 9-10, *Towns* is readily distinguishable from the case at bar. The uncalled witness in *Towns* had been willing to testify at defendant's trial to exculpate defendant, whereas here there is no evidence that O'Day was willing to testify *at White's trial* (as opposed to today, after he is no longer facing an armed-robbery charge arising out of that same incident). Indeed, unlike the defense counsel found ineffective in *Towns*, Smith's defense counsel here "would have had no reason to believe that an essentially charged co-defendant would incriminate himself and exonerate Petitioner." Gov's Response to Objection at 10. Accordingly, the Magistrate Judge is right to recommend denial of habeas claim 3A for lack of merit even if it is not procedurally defaulted.

Trial Counsel Did *Not* Render Ineffective Assistance by Failing to Call a Ballistics Expert

16

In his claim 3C, Smith contended before the Magistrate Judge that trial counsel rendered ineffective assistance by failing to call an independent ballistics expert to testify at trial. Like the Magistrate Judge, this court declines to consider whether this claim was procedurally defaulted by Smith's failure to raise it on direct appeal to the Michigan Court of Appeals. This court agrees with the Magistrate Judge that habeas claim 3C fails simply because Smith failed to specify what such an independent expert might have testified that would have tended to exculpate him or undermine the prosecution's case in the eyes of the factfinder. Smith's objections belatedly speculate that an independent ballistics expert "would have proven that the complainant was shot with a .38 not a 9 mm" handgun, and that the expert "would have changed the whole complexion of the trial" by showing that victim *White* was shooting at someone, *see* Smith's Objections at unnumbered page 8. Yet as the government points out, *see* Gov's Response to Objections at 11, Smith provides no affidavit in support of this conjecture. *See Moorer v. Price*, 2003 WL 22480157, *7 (E.D. Mich. Oct. 3, 2003) (Roberts, J.) ("Petitioner has therefore failed to establish that he was denied the effective assistance of counsel from his trial counsel's failure to call or use a forensic expert to examine the physical evidence in this case, because he has failed to present any testimony to establish that an expert witness could have been obtained to testify favorably for him on this issue.") (citing *Malcum v. Burt*, 276 F. Supp.2d 664 (E.D. Mich. 2003) (Hood, J.) and *Dell v. Straub*, 194 F. Supp.2d 629, (E.D. Mich. 2002) (Friedman, J.), *recon. denied*, 2002 WL 1303089 (E.D. Mich. 2002)).

Moreover, even without the testimony of an independent ballistics expert called by the defense, the government's own expert already conceded at trial that two different types of ammunition were found on the ground at Interfaith apartments on that night in December 2001, such

17

that the bullets could have been fired from different weapons. The factfinder already heard expert testimony that there may have been more than one shooter, yet it still found Smith guilty beyond a reasonable doubt. *See Hudson v. Lafler*, 2005 WL 1662541, *5 (W.D. Mich. June 8, 2006) (Borman, J.) ("[C]ounsel's failure to call an independent firearms expert was not ineffective, when counsel was able to elicit the same testimony regarding the limitations of gunshot residue evidence from the prosecution's expert on cross-examination.") (citing *US v. McGill*, 11 F.3d 223, 227-28 (1st Cir. 1993) and *Hughes v. US*, 241 F. Supp.2d 148, 158 (D.R.I. 2003)); *cf. Moss v. Cason*, 2006 WL 3209954, *21 (W.D. Mich. Nov. 6, 2006) (Bell, C.J.) (agreeing with Michigan Court of Appeals that defendant's "trial counsel could not have been ineffective for deciding, as a matter of trial strategy, that he would not present additional, cumulative testimony").

Accordingly, the Magistrate Judge is right to recommend denial of habeas claim 3C for lack of merit even if it is not procedurally defaulted.

Smith's Habeas "Claims" 4, 5 and 6.

Smith's objections say nothing specific in derogation of the Magistrate Judge's recommended disposition of his fourth habeas claim, ineffective assistance of appellate counsel. *See* Smith's Objections at 10. In any event, Smith's claim for ineffective assistance of appellate counsel lacks merit. The alleged deficient performance of appellate counsel was his failure or refusal to raise the argument that trial counsel was ineffective; because trial counsel was not constitutionally ineffective, appellate counsel could not have performed deficiently (and cannot have prejudiced Smith) by "failing" to assert the trial-counsel argument on direct appeal. "As a matter of law, one cannot render constitutionally ineffective assistance of counsel by "failing"or refusing to raise

arguments which lack merit, whether at trial or on appeal." *US v. Latham*, No. 2009-cv-966, 2010 WL ____ (W.D. Mich. Jan. 8, 2010) (Maloney, C.J.). *See also Wilkey v. Jones*, 2009 WL 3153101, *16 (W.D. Mich. Sept. 28, 2009) (Maloney, C.J.) ("'An attorney's failure to make an [argument or] objection will not alter the outcome of a proceeding if the objection is meritless, and hence would not be sustained.'") (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 380 n.6 (1993) (Stevens, J., dissenting o.g., joined by Blackmun, J.)) ("Trial counsel's 'failure' to make a meritless objection on the [prosecutorial] vouching issue * * * did not satisfy *Strickland*'s second prong, the prejudice prong."); *Burton v. Renico*, 391 F.3d 764, 780 (6th Cir. 2004) ("[A] constitutional claim based on the absence of an instruction regarding mitigation or justification in this case lacks merit, so it cannot be said that failure to raise such an objection on appeal constituted ineffective assistance . . . .").[3]

Smith denominated as his fifth habeas "claim" the argument that the court should reach the merits of his claims because the complained-of constitutional violations resulted in the conviction of someone who was actually innocent. Finally, Smith denominated as his sixth habeas "claim" the argument that he was not required to assert his ineffective-assistance claims on direct appeal, but rather was permitted to wait until collateral review to assert them. The Magistrate Judge did in fact address the merits of Smith's claims, rather than concluding that they were procedurally defaulted or otherwise not properly before this court on habeas review. *See* R&R at 27.

---

[3]

*See, e.g., Kincade v. Wolfenbarger*, 324 F. App'x 482, 495 (6th Cir. 2009) (<u>C.J. Boggs</u>, Gilman, Rogers) ("'By definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'") (brackets omitted) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)), *pet. cert. filed o.g.* (Sept. 17, 2009) (No. 09-7646);

*Ashe v. Jones*, 2000 WL 263342, *4 (6th Cir. Feb. 29, 2000) ("Kujenga's trial counsel was not required to make a meritless objection to its admission.");

19

**ORDER**

Movant Smith's objections [doc. # 23] are **OVERRULED**.

The R & R [doc. # 27] is **ADOPTED**.

The section 2254 motion is **DENIED**.

The separate judgment required by FED. R. CIV. P. 58 shall issue contemporaneously.

This civil case is **TERMINATED** and **CLOSED**.

This is a final order, but the court declines to issue a certificate of appealability.[4]

**IT IS SO ORDERED** this 13th day of January 2010.

                                        /s/ Paul L. Maloney
                                        Honorable Paul L. Maloney
                                        Chief United States District Judge

---

[4] "[A] petitioner appealing the denial of a § 2255 petition must 'apply first to the district court for a certificate of appealability." *Wilson v. US*, 287 F. App'x 490, 493 (6th Cir. 2008) (quoting *Kincade v. Sparkman*, 117 F.3d 949, 953 (6th Cir. 1997)). Smith need not and should <u>not</u> ask this court for a COA, because today's opinion already declares this court's view that a COA is not appropriate. If Smith wishes to appeal, he must seek a COA from the U.S. Court of Appeals for the Sixth Circuit.